'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMELLE EDWARD ARMSTRONG, | Case No. 2:22-cv-01019-CAS-MAA |
| Petitioner, | **ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| v. | |
| GISELLE MATTESON, Warden, California State Prison, Solano, | |
| Respondent. | |

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus (dkt. 1, "Pet."), all of the records herein, the Report and Recommendation of United States Magistrate Judge (dkt. 27, the "Report"), and the Objections to the Magistrate Judge's Report and Recommendation (dkt. 28, the "Obj."). Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the Court has conducted a de novo review of those portions of the Report to which objections

have been stated. Having completed its review, the Court accepts the findings and recommendations set forth in the Report.

## II. BACKGROUND

On April 22, 2004, Petitioner Jamelle Edward Armstrong ("Petitioner") was convicted of murder, robbery, kidnapping, rape, sexual penetration by a foreign object, and torture in Los Angeles County Superior Court. Report at 2. On May 10, 2004, the jury returned a sentence of death, and on July 16, 2004, the trial court sentenced Petitioner to death. Id.

Petitioner's conviction was automatically appealed to the California Supreme Court. Id. While the direct appeal was pending, on December 7, 2018, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was denied without prejudice on November 26, 2019. Id. On February 4, 2019, the California Supreme Court affirmed Petitioner's convictions but reversed the death sentence, because the trial court improperly excused multiple prospective jurors for cause. Id. Petitioner's petition for rehearing in the California Supreme Court and subsequent petition for writ of certiorari in the United States Supreme Court were denied respectively on March 20, 2019 and November 4, 2019. Id.

On remand to the Los Angeles County Superior Court, the People elected not to retry Petitioner seeking the death penalty. Id. On March 30, 2021, Petitioner was sentenced to life in prison without the possibility of parole. Id.

On February 15, 2022, Petitioner filed the instant Petition for Writ of Habeas Corpus ("Petition"), asserting that the state prosecutor and state trial court violated his Batson rights. Dkt. 1. Specifically, Petitioner argues that the prosecutor's peremptory challenges of four Black male jurors were racially motivated and her proffered "race-neutral" explanations were pretextual. Id. at 61. On August 7,

2023, the Hon. Louise A. LaMothe, United States Magistrate Judge, issued a Report and Recommendation, recommending that the Court deny Petitioner's claim. Report at 48. On August 28, 2023, Petitioner filed his Objections. Obj. at 1.

### III.   LEGAL STANDARD

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner whose claim has been "adjudicated on the merits" cannot obtain federal habeas relief unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. "AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (citations and quotations omitted).

The Equal Protection Clause prohibits the exercise of a peremptory challenge solely on the basis of a prospective juror's race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). In Batson, the Supreme Court established a three-step process for the trial court to use in adjudicating a claim that a peremptory challenge was based on race. First, the defendant must make a prima facie showing that the prosecution has exercised a peremptory challenge on the basis of race. Id. That is, the defendant bears the burden of demonstrating that the facts and circumstances of the case "raise an inference" that the prosecution has excluded venire members from the jury solely on account of their race. Id. Second, if a defendant makes this prima facie showing, the burden shifts to the

prosecution to provide a neutral explanation for its challenge. Id. at 97. Third and finally, "[t]he trial court will then have the duty to determine if the defendant has established purposeful discrimination." Id. at 98. At this third step, the court must evaluate the credibility of the prosecutor's proffered justifications to determine whether they are genuine. Purkett v. Elem, 514 U.S. 765, 769 (1995).

When applying the "deferential AEDPA standard in the Batson context, we end up with a standard of review that is 'doubly deferential,' because the federal court defers to the state reviewing court's determination of the facts, and the reviewing court defers to the trial court's determination of the prosecutor's credibility. This doubly deferential standard means that 'unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it.'" Sifuentes v. Brazelton, 825 F.3d 506, 518 (9th Cir. 2016) (citations omitted).

## IV. DISCUSSION

Petitioner argues that the Report must be rejected because (1) the California Supreme Court "condemned the prosecutor for unprofessional, misleading, and deceptive conduct," casting doubt on its ultimate holding that the prosecutor's proffered "race-neutral" reasons were genuine; and (2) the reasons offered for striking the four jurors—S.L., R.C., E.W., and R.P.—were pretextual. Obj. at 2-3. The Court addresses each objection in turn.

### A. General Objection Regarding the Prosecutor's Subjective Intent

Before presenting specific objections regarding each stricken Black male juror, Petitioner objects generally to the Magistrate Judge's "ignor[ance]" or "discount[ing]" of the California Supreme Court's purported finding that the

4

prosecutor in this case lacked sincerity. Obj. at 2. Petitioner contends that the California Supreme Court "condemned" the prosecutor for "improper [for cause] challenges that resulted in the death [penalty] reversal, [] knowingly keeping exculpatory facts in Petitioner's confession from the jury, [and] suppressing an exculpatory toxicology report." Id. Petitioner also asserts that the California Supreme Court "generally… accus[ed] the prosecutor of misleading the jury." Id. Petitioner therefore argues that the California Supreme Court unreasonably applied federal law and did not examine the totality of the circumstances, because while it condemned the prosecutor for "misleading" and "deceptive" conduct, it relied upon the prosecutor's "sincerity" to deny Petitioner's Batson claim. Id.

The Court recognizes that, in evaluating the plausibility of the prosecutor's explanation for a challenged strike, the state trial court must "evaluate[ ] the 'totality of the relevant facts' to decide 'whether [the prosecutor]'s race-neutral explanation for [the] peremptory challenge[s] should be believed.'" Ali v. Hickman, 584 F.3d 1174, 1180 (9th Cir. 2009). In Flowers, the United States Supreme Court provided the following examples of evidence that "defendants may present" to support a Batson claim:

- statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case;
- evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case;
- side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case;
- a prosecutor's misrepresentations of the record when defending the strikes during the Batson hearing;
- relevant history of the State's peremptory strikes in past cases; or

      • other relevant circumstances that bear upon the issue of racial discrimination.

Flowers v. Mississippi, 588 U.S. 284, 302 (2019).[1]  Here, Petitioner appears to argue that the prosecutor's misconduct in closing argument, improper striking of jurors for cause, and successful motions to exclude certain evidence are "other relevant circumstances that bear upon the issue of racial discrimination." However, the Court finds that each of these inquiries are distinct from the issue at hand: whether the California Supreme Court was objectively unreasonable in concluding that there was substantial evidence for the state trial court's finding that the prosecutor's race-neutral explanations for the challenged peremptory strikes were credible.

      Petitioner has not shown how the other identified actions of the prosecutor in this case "bear upon the issue" of whether the prosecutor acted with purposeful discrimination when striking S.L., R.C., E.W., and R.P. from the jury.  The only conduct related to jury selection that Petitioner urges the Court to consider here as "other relevant circumstances"—the improper excusal of jurors for cause—does

---

[1] Flowers is not cited in the California Supreme Court's decision, as it had not yet been decided.  Nevertheless, the Court notes that Petitioner presented, and the California Supreme Court considered, several of the categories of evidence that Flowers describes as "example[s]" of what "defendants may present." Flowers, 588 U.S. at 302.  Namely, Petitioner argued before the California Supreme Court that his Batson claim was supported by statistical evidence, in that 100% of Black men were stricken; evidence of the prosecutor's disparate questioning of Black and white prospective jurors; side-by-side comparisons of Black prospective jurors who were struck and white prospective jurors who were not struck, i.e., comparative juror analysis; and the prosecutor's misrepresentations of the record in the Batson hearing, especially as it related to E.W.  See People v. Armstrong, 6 Cal. 5th 735, 768–85 (2019).  The California Supreme Court issued a reasoned decision rejecting these arguments for each challenged juror, and holding that substantial evidence supported the state trial court's finding that the prosecutor's race-neutral reasons for striking S.L., R.C., E.W., and R.P. were genuine.  Id.

not appear to be related to race at all.  Cf. Jackson v. Broomfield, No. 22-55937, 2024 WL 1367169, at *2 (9th Cir. Apr. 1, 2024) (affirming the granting of habeas relief on a Batson claim when some of the reasons provided by the prosecutor for striking potential Black jurors were not legitimate, and finding that this conclusion was bolstered by other relevant evidence, including that 100% of Black jurors were struck and that they were struck in the prosecutor's first seven of his 18 peremptory strikes).

### B. Specific Objections to the Proffered Reasons for Peremptory Strikes Against Prospective Black Male Jurors

Next, Petitioner objects to the Report's analysis of each stricken Black male juror, which the Court analyzes in turn.  However, as an initial matter, the Court notes its agreement with the Magistrate Judge that "'neither the Supreme Court nor [the Ninth Circuit] has recognized that a combined gender and race class, such as [Black men], is a cognizable group' for purposes of a Batson inquiry."  Report at 35 (citing Nguyen v. Frauenheim, 45 F.4th 1094, 1099 (9th Cir. 2022)).  "As such, considering a mixed gender and race class under Batson would require applying a new rule, which is barred by Teague v. Lane."  Id.  Accordingly, the Court agrees with the Magistrate Judge that Petitioner's claims must be analyzed on the basis of discrimination against African Americans, not discrimination against African American men.  In the present case, one African American woman ultimately served on Petitioner's jury, which may indicate the prosecutor's nondiscriminatory motive.  See Gonzalez v. Brown, 585 F.3d 1202, 1210 (9th Cir. 2009) ("The fact that African–American jurors remained on the panel [at the time of the Batson motion] 'may be considered indicative of a nondiscriminatory motive.'").

1. S.L.

As for S.L., Petitioner contends that the Magistrate Judge "ignored" a large part of the record and did not consider the totality of the circumstances, as mandated by Flowers. Obj. at 4. For example, Petitioner states that the Magistrate Judge ignored the prosecutor's "utterly ridiculous" claim that S.L. was not paying close attention during the voir dire of other jurors. Id. Petitioner also states that the Magistrate Judge did not properly address the comparative analysis set forth in the Petition. Id. For example, while the prosecutor relied on S.L.'s statement that he would vote for life imprisonment if there was any chance of rehabilitation, and that he would lean toward life imprisonment if this was Petitioner's "first hateful act," Petitioner asserts that no sitting white juror—many of whom also believed that rehabilitation was significant—were asked the same line of questioning. Id. Additionally, Petitioner disputes the Magistrate Judge's reliance on the fact that the prosecutor excused some white jurors with similar beliefs, arguing that pursuant to Flowers, such strikes are meaningless "if the number of white prospective jurors overwhelmingly outnumbers the number of [B]lack prospective jurors." Id.

Next, Petitioner contends that the Magistrate Judge ignored that the prosecutor urged the state trial court to follow the "wrong law" when she said that a single Batson challenge is unsustainable because "no pattern had been established," and even urged sanctions upon counsel for making the first peremptory challenge. Id. at 5. Petitioner asserts that, given the prosecutor's misconduct in jury selection, "it can be properly inferred that this misciting of the law was also intentional." Id. Finally, Petitioner states that the Magistrate Judge ignored the fact that after his initial voir dire, S.L. "freely admitted" to the state trial court and counsel that he had reconsidered his position and found himself more in favor of the death penalty than previously communicated. Id. Petitioner

argues that the prosecutor should have attempted to learn "what S.L. meant by this," but never asked follow-up questions, revealing her true intent. Id.

The Court agrees with the Magistrate Judge that the white jurors at issue in Petitioner's comparative analysis were not similarly situated to S.L., and therefore do not provide sufficient evidence of pretext to render the California Supreme Court's decision unreasonable. This is because "none of these [white] jurors answered as Petitioner did to both questions—saying that life in prison was 'worse' and a 'more severe punishment [than the death penalty].'" Report at 38. "Ambiguity as to whether a juror would be able to give appropriate consideration to imposing the death penalty is a legitimate and reasonable basis for striking a juror." Sifuentes v. Brazelton, 825 F.3d 506, 523 (9th Cir. 2016) (citing White v. Wheeler, 577 U.S. 73, 79 (2015)). This finding bolsters the state trial court's ruling that the prosecutor's proffered race-neutral reasons for striking S.L. were genuine, especially given the deference owed to the trial court's determination.

Further, the Court agrees with the Magistrate Judge that "the more detailed and lengthy inquiry into S.L. was an attempt to clarify S.L.'s ambiguous answers rather than evidence of 'dramatically disparate questioning' based on race." Report at 40. Finally, the Court finds that the Magistrate Judge did not "ignore" the other factors set forth by Petitioner, but rather found that "Petitioner does not explain how these events demonstrate purposeful racial discrimination in the prosecutor's exercise of a peremptory challenge against S.L. or overcome the deference due to the trial court's credibility findings." Id.

The Court acknowledges that "[i]n exercising peremptory strikes against [jurors in capital cases], both the prosecution and the defense may be required to make fine judgment calls about which jurors are more or less willing to vote for the ultimate punishment. These judgment calls may involve a comparison of responses that differ in only nuanced respects and may involve a sensitive

assessment of jurors' demeanor." Stevens v. Davis, 25 F.4th 1141, 1152 (9th Cir. 2022) (citations and quotations omitted). As such, "[t]he Supreme Court has indicated that appellate courts must be cautious in capital cases not to 'second-guess a trial judge's decision' on the basis of a 'cold record.'" Id. Given the state trial court's acceptance of the prosecutor's race-neutral justification, which is supported by the record, as well as the deferential AEDPA standard, the Court finds that the California Supreme Court was not objectively unreasonable in ruling that the prosecutor held a genuine race-neutral reason for striking S.L.

2. R.C.

As for R.C., Petitioner objects to the Magistrate Judge's characterization of the "argument" between him and the prosecutor as the juror's fault. Obj. at 6. Petitioner contends that on five separate occasions, R.C. stated that while he had no personal preference as to one penalty over the other, he was "more than capable of following" California's death penalty law. Id. Petitioner states that several of the sitting white jurors also indicated that they had no personal preference, but none were questioned about it. Id. Petitioner thus argues that R.C. was prodded and harassed by the prosecutor with the same question over and over again, making the prosecutor responsible for the argument. Id.

The Court agrees with the Magistrate Judge's finding that the California Supreme Court was not objectively unreasonable in finding that the "combative exchanges" between R.C. and the prosecutor were a genuinely offered, race-neutral justification for striking R.C. Report at 41. The California Supreme Court and the Magistrate Judge were correct to defer to the state trial court's summary of R.C.'s answers to the prosecutor as "You'll have to find out later." Id. at 42.

R.C.'s non-responsiveness and "friction" with the prosecutor are race-neutral reasons for the prosecutor's striking of R.C. See Sifuentes v. Brazelton, 825 F.3d 506, 531 (9th Cir. 2016) (holding that "the California Court of Appeal's

10

conclusion that the trial court's credibility finding was supported by substantial evidence is not an objectively unreasonable determination of the facts" when the prosecutor stated that the juror at issue was "totally nonresponsive" to questions regarding the death penalty); United States v. Power, 881 F.2d 733, 740 (9th Cir. 1989) (finding that the prosecutor's stated fear that a juror "might be hostile to the government" constituted a race-neutral reason for striking that juror). The Court further agrees with the Magistrate Judge's determination that the white jurors at issue in Petitioner's comparative analysis were not similarly situated to R.C., because they did not have any "friction" with the prosecutor.

While Petitioner argues that the prosecutor, not R.C., was responsible for the friction between them, the Court finds that the California Supreme Court and the Magistrate Judge correctly deferred to the credibility determination of the state trial court on this issue, as required by Batson. Regarding R.C., the state trial court specifically found that he was a "belligerent and hostile juror toward the prosecutor." Report at 42. Because "determinations of credibility and demeanor lie 'peculiarly within a trial judge's province,'" the Court does not find that the California Supreme Court was objectively unreasonable in ruling that the prosecutor's race-neutral reasons for striking R.C. were sincere. See Snyder v. Louisiana, 552 U.S. 472, 477 (2008).

3. E.W.

As for E.W., Petitioner objects to the Magistrate Judge's acceptance of the California Supreme Court's finding that E.W.'s views about the imposition of the death penalty were the prime motivation for this peremptory challenge. Obj. at 7. Petitioner argues that the Magistrate Judge erroneously relied on E.W.'s statement that life imprisonment was more severe than the death penalty and that the death penalty was administered too slowly, and on the fact that the prosecutor excused some white prospective jurors with the same views as E.W. Id. Petitioner again

11

argues that what matters is which jurors remain on the jury, not which are excused, and that many of the sitting white jurors had the same opinions of the four Black male jurors who were stricken. Id.

Next, Petitioner objects to the Magistrate Judge's "discounting" of the prosecutor's on-the-record statement that one of the reasons she excused E.W. was that she could not trust an engineer to hold the prosecutor to the correct standard of proof. Id. Petitioner argues that this is further evidence of the prosecutor's insincerity, because E.W. stated that he could impose the death penalty. Id. at 8. Petitioner states that contrary to the Report, it is not true that E.W. could not affirmatively state that he was in favor of the death penalty. Id. Further, Petitioner states that the prosecutor allowed sitting white Juror #11, also an engineer, to remain on the jury. Id. Finally, Petitioner states that the Magistrate Judge ignored the prosecutor's remark that she was worried that E.W. knew too much about the law because he understood the terms "intent" and "aiding and abetting"—terms that, according to Petitioner, are used in everyday conversation, and terms that were not the subject of questioning for other jurors. Id.

The Court finds that the Magistrate Judge was correct in determining that the California Supreme Court did not act unreasonably in deferring to the state trial court's acceptance of the prosecutor's race-neutral reasons for striking E.W. While the Magistrate Judge "agree[d]" with Petitioner's assertion that "E.W. stated that he could faithfully follow the law and… would be able to vote for death in certain instances," the Magistrate Judge correctly pointed out that "the prosecutor was not prohibited from using peremptory challenges against prospective jurors who expressed more reservations or hesitancy in voting for death over life in prison than others." Report at 44. Further, the Magistrate Judge was correct in finding that "[d]espite his willingness to follow the law, E.W.'s answers could objectively be characterized as being equivocal on use of the death penalty," and it was

reasonable for the trial court to credibly find that E.W. was more skeptical of the death penalty than other comparable jurors.  Id.  See, e.g., Stevens v. Davis, 25 F.4th 1141, 1157 (9th Cir. 2022) ("Each of these prospective jurors expressed some ambivalence regarding imposing the death penalty, but the comparisons do not provide sufficient evidence of pretext to render the California Supreme Court's ultimate factual determination objectively unreasonable.").

As for the issue of E.W.'s profession, the Court concludes that the Magistrate Judge was correct in finding that such reasoning for a strike is race-neutral, as "[e]xcluding jurors because of their profession… is wholly within the prosecutor's prerogative."  See United States v. Thompson, 827 F.2d 1254, 1260 (9th Cir. 1987).  Petitioner argues that the fact that Juror #11, also an engineer, was permitted to remain, shows discriminatory purpose in striking E.W.  However, the Court determines that the California Supreme Court was not objectively unreasonable in finding that because Juror #11's views on the death penalty differed from E.W.'s views, the prosecutor's reliance on E.W.'s profession was sincere.  See People v. Armstrong, 6 Cal. 5th 735, 780 (2019) ("Unlike E.W., Juror No. 11 indicated death was a more severe punishment than life in prison.  Unlike E.W., Juror No. 11 did not think the state should consider abandoning the death penalty.  An engineer with these views might be acceptable, even if not ideal, while an engineer with views like E.W.'s was deemed too big a risk to take in selecting the jury.").

The California Supreme Court was also not objectively unreasonable in relying on the fact that the prosecutor did not identify E.W.'s profession as "one of the two things that really bother me" about E.W., but rather, as one of eight reasons in a longer list of proffered explanations.  See id. at 782 ("The prosecutor herself highlighted the considerations that concerned her most.  The trial court took her at her word and evaluated those reasons for their genuineness and neutrality.  Once

they passed muster, it was not error to omit express consideration of secondary factors."). Because "determinations of credibility and demeanor lie 'peculiarly within a trial judge's province,'" the Court does not find that the California Supreme Court was objectively unreasonable in deferring to the state trial court's determination here. See Snyder v. Louisiana, 552 U.S. 472, 477 (2008).

    4. R.P.

As for R.P., Petitioner argues that the Magistrate Judge relied on R.P.'s answers that the death penalty was sometimes overused and that some of his friends and family had negative experiences with the police in finding that the prosecutor had a race-neutral justification. Obj. at 9. Petitioner argues that these reasons are an "end run" around the Equal Protection Clause. Id. Additionally, Petitioner objects to the use of R.P.'s prior jury service, which he described as "disturbing," as a race-neutral reason to strike him, because it is rational to find a murder case disturbing. Id. Petitioner next argues that the Magistrate Judge acknowledged that sitting white jurors with the same attitudes as R.P. remained on the jury, but found that they were not similarly situated because they had some differing beliefs. Id. Petitioner states that Flowers rejected this approach of picking isolated facts and improperly employing them to create a race-neutral reason, when the record indicates otherwise. Id.

    The Court finds that the Magistrate Judge correctly deferred to the California Supreme Court's ruling that the prosecutor's stated reasons for striking R.P. were not pretextual. Petitioner argues that the Magistrate Judge's reliance on the fact that comparable white jurors did not volunteer that they were "disturbed" by prior jury service, differentiating them from R.P., is simply cherry-picking of isolated facts. However, the Court finds that it was not unreasonable for the California Supreme Court to find that the totality of relevant facts demonstrated that R.P.'s prior jury service constituted a genuinely proffered, race-neutral reason to strike

him. The Court agrees with the Magistrate Judge that "these circumstances do not suggest disparate questioning by the prosecutor." Report at 47. Petitioner's argument that R.P.'s description of his prior jury service was "rational" appears to be immaterial to the question at hand: whether the prosecutor was sincere in stating that she struck R.P. because of his prior experience on a jury for a murder case.

**C. Summary**

Because Petitioner has failed to demonstrate that the California Supreme Court was objectively unreasonable in finding that the trial court's determination of the prosecutor's credibility in striking S.L., R.C., E.W., and R.P. was supported by substantial evidence, the Court denies Petitioner's <u>Batson</u> claim.

While not raised by Petitioner, the Court independently reviewed two recent decisions granting <u>Batson</u> challenges on habeas review from the Central District of California: <u>Jones v. Broomfield</u>, 562 F. Supp. 3d 652, 693 (C.D. Cal. 2021) and <u>Jackson v. Davis</u>, No. LA CV 97-03531 MWF, 2022 WL 18284663, at *30 (C.D. Cal. Feb. 9, 2022), <u>aff'd sub nom.</u> <u>Jackson v. Broomfield</u>, No. 22-55937, 2024 WL 1367169 (9th Cir. Apr. 1, 2024). These cases further demonstrate, by way of comparison, why Petitioner's claim does not satisfy the highly deferential standard imposed by AEDPA.[2] In <u>Jones</u>, the Court conducted a de novo review of the California Supreme Court's decision denying the <u>Batson</u> claim because the parties agreed that the California Supreme Court "applied an impermissibly stringent test in rejecting" the <u>Batson</u> claim. <u>Jones</u>, 562 F. Supp. 3d at 667. This is because the California Supreme Court had used California's test from <u>People v. Wheeler</u>, 22 Cal. 3d 258, 280 (1978), which the United States Supreme Court "expressly

---

[2] These cases are also factually distinguishable from the instant case, including the fact that in both <u>Jones</u> and <u>Jackson</u>, 100% of Black jurors were stricken. See <u>Jones</u>, 562 F. Supp. 3d at 671; <u>Jackson</u>, 2022 WL 18284663, at *6.

15

invalidated… as unconstitutional and inconsistent with Batson" in 2005. Id. Here, the Court is not required to conduct a de novo review on this basis, as the California Supreme Court in Petitioner's direct appeal did not erroneously apply the more stringent test from Wheeler. See Armstrong, 6 Cal. 5th at 766. The parties in the instant case appear to agree that the relevant standard is 28 U.S.C. § 2254(d)(2), not 28 U.S.C. § 2254(d)(1).

In Jackson, the Court reevaluated the California Supreme Court's decision denying the petitioner's Batson claim because the California Supreme Court had failed to conduct a comparative analysis of the stricken and selected jurors. Jackson, 2022 WL 18284663, at *13. In doing so, the Court relied on the Ninth Circuit's decision in Jamerson v. Runnels, 713 F.3d 1218, 1225 (9th Cir. 2013), which holds that, in such circumstances, "[t]o begin, we must perform in the first instance the comparative analysis that the state court declined to pursue." Id. at *12. Here, by comparison, the Court is not required to perform a comparative juror analysis in the first instance, because the California Supreme Court grappled with Petitioner's comparative juror arguments on direct appeal. See Armstrong, 6 Cal. 5th at 770-785. Specifically in regards to E.W., the California Supreme Court found that comparative juror analysis did not have much "force," because the compared jurors did not express "a substantially similar combination of responses." See id. at 780. The Court concludes that these findings were not objectively unreasonable under 28 U.S.C. § 2254(d)(2).

Accordingly, and in contrast to Jones and Jackson, the Court reiterates that the Magistrate Judge correctly applied a "doubly deferential" standard of review in the instant case. See Report at 35.

16

## V. CONCLUSION

Having completed its review, the Court accepts the findings and recommendations set forth in the Report. Accordingly, IT IS ORDERED that (1) the Petition is **DENIED**; and (2) Judgment shall be entered dismissing this action. The Court **GRANTS** Petitioner's request for a certificate of appealability.

Dated:  August 25, 2025

*Christina A. Snyder*
CHRISTINA A. SNYDER
United States District Judge